**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BRYNN THOMPSON, individually and on behalf of similarly situated individuals, ) ) ) | |
| ) | Case No. 3:23-cv-03904 |
| *Plaintiff,* ) | |
| ) | Hon. Nancy J. Rosenstengel |
| v. ) | |
| ) | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, and PRUCO LIFE INSURANCE COMPANY, an Arizona corporation, ) ) ) ) ) | |
| ) | |
| *Defendants.* ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Brynn Thompson ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this First Amended Class Action Complaint against Defendants The Prudential Insurance Company of America and Pruco Life Insurance Company (collectively "Prudential" or "Defendants") for their violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("GIPA"), and to obtain redress for persons injured by their conduct. Plaintiff alleges the following based on personal knowledge as to Plaintiff's own experiences, and as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

1.     This case concerns the misuse of individuals' genetic information in Illinois by Prudential, one of the nation's largest life insurance companies. To assess eligibility for life insurance coverage, Defendants require their customers to undergo a medical physical exam during which genetic information in the form of their family medical history is requested.

1

2.      Having recognized the uniquely private and sensitive nature of genetic information – and the potential for harmful discrimination that such information may encourage among insurers – the Illinois General Assembly enacted GIPA in part to regulate insurers' use of such genetic information. In addition to its baseline protections of individuals' genetic information, GIPA specifically provides that an insurer shall not use "protected health information that is genetic information" for underwriting purposes including the assessment of an individual's eligibility. 410 ILCS 513/20(b).

3.      GIPA defines "genetic information" as information pertaining to: (i) an individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual. 410 ILCS 513/10, by reference to 45 C.F.R. § 160.103.

4.      Genetic information, including familial health history, is a uniquely private and sensitive form of personal information. The genetic information contained therein reveals a trove of intimate information about that person's health, family, and innate characteristics.

5.      In requiring prospective customers, such as Plaintiff, to undergo a medical physical exam seeking their family medical history, Defendants have violated Plaintiff's and the other putative Class members' statutory right to genetic privacy when such protected health information was obtained and used by Defendants.

6.      In enacting GIPA, the Illinois Legislature recognized that "[d]espite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic

testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." *See* 410 ILCS 513/5(2).

7.      GIPA bestows a right to privacy in one's genetic information and a right to prevent the use of or disclosure of genetic information.

8.      Despite GIPA's prohibition against the use of protected health information and family medical information concerning familial diseases and disorders, Defendants continue to request protected familial medical history from their customers and prospective customers to assess their eligibility for insurance coverage in violation of GIPA.

9.      Plaintiff brings this action for statutory damages and other remedies as a result of Defendants' conduct in violating Plaintiff's Illinois genetic privacy rights.

10.      On Plaintiff's own behalf, and on behalf of the proposed Class defined below, Plaintiff seeks an injunction requiring Defendants to comply with GIPA, as well as an award of statutory damages under GIPA to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

11.      Defendant Pruco Life Insurance Company is a corporation organized under the laws of the state of Arizona that conducts business throughout Illinois.

12.      Defendant The Prudential Insurance Company of America is a corporation organized under the laws of the state of New Jersey that conducts business throughout Illinois. Defendant The Prudential Insurance Company of America owns Defendant Pruco Life Insurance Company – a wholly owned subsidiary – and, on information and belief, manages and controls the operations of Defendant Pruco Life Insurance Company. Defendant The Prudential Insurance Company of America shares an office address with Defendant Pruco Life Insurance Company at

751 Broad Street, Newark, NJ 07102 and both Defendants operate their life insurance business under the same name and trademark "Prudential."

13.    In addition to office space, Defendant The Prudential Insurance Company of America shares officers, employees, supplies, and use of equipment with Defendant Pruco. Defendant The Prudential Insurance Company of America exerts primary or significant control over Defendant Pruco's insurance offerings and application policies and procedures, including its unauthorized use of the genetic information protected by GIPA at issue in this suit.

14.    At all relevant times, Plaintiff Brynn Thompson has been a resident of the state of Illinois.

## JURISDICTION AND VENUE

15.    This Court may assert subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq*., because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendants; and none of the exceptions under subsection 1332(d) apply.

16.    This Court may assert personal jurisdiction over Defendants, because Defendants are knowingly doing business within this State, and knowingly transact business within this State such that they have sufficient minimum contacts with Illinois and/or have purposely availed themselves of Illinois markets to make it reasonable for this Court to exercise jurisdiction over them, and because Plaintiff's claims arise out of Defendants' unlawful in-state actions.

17.    Venue is proper in this District because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

18.     The genomic revolution of recent decades has brought with it great advancements in biological sciences and medicine. Modern genomic technologies allow individuals to gather genealogical information about themselves and their relatives, to discover their genetic predisposition for diseases before any symptoms manifest, and in some cases to prevent and treat such diseases.

19.     These and other benefits of genomic science have coincided with a rapid decline in the cost of genetic testing. Since the turn of the 21st century, the cost of collecting and analyzing a complete individual human genome has fallen from more than $100,000,000 in 2001 to less than $1,000 in 2022.[1] Despite the benefits to science and health care that could be gained from increased access to genetic testing, the Centers for Disease Control expressed counterbalancing concerns related to genetic privacy as early as 1996.[2]

20.     As recognized by the CDC and the Illinois Legislature, progress in the field of genomics does not come without risk, and as the benefits and accessibility of genetic testing have grown so too has the potential for abuse and discrimination. To address these and other concerns related to misusing genetic information, Illinois and other states regulate the collection, use, and disclosure of such information.

21.     In 1998, the Illinois General Assembly enacted the Genetic Information Privacy Act, 410 ILCS 513/1 *et seq.* out of recognition that people's genetic information could be used for discriminatory purposes, one of the most harmful of which would occur in the context of insurance.

---

[1] https://www.genome.gov/about-genomics/fact-sheets/DNA-Sequencing-Costs-Data
[2] Board on Biology National Research Council. *Privacy Issues in Biomedical and Clinical Research: Proceedings of Forum on November 1, 1997* (Washington D.C., National Academy Press, 1997) 1.

22.     Accordingly, GIPA prohibits an insurer from using "protected health information that is genetic information" for underwriting purposes. 410 ILCS 513/20(b).

23.     Specifically, an insurer may not use such genetic information for underwriting purposes defined as:

> (1) rules for, or determination of, eligibility (including enrollment and continued eligibility) for, or determination of, benefits under the plan, coverage, or policy (including changes in deductibles or other cost-sharing mechanisms in return for activities such as completing a health risk assessment or participating in a wellness program);
>
> (2) the computation of premium or contribution amounts under the plan, coverage, or policy (including discounts, rebates, payments in kind, or other premium differential mechanisms in return for activities, such as completing a health risk assessment or participating in a wellness program);
>
> (3) the application of any pre-existing condition exclusion under the plan, coverage, or policy; and
>
> (4) other activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits.

410 ILCS 513/20(b)(1)-(4).

24.     GIPA defines an insurer, in relevant part, as "[] (i) an entity that is subject to the jurisdiction of the Director of Insurance and (ii) a managed care plan." 410 ILCS 513/10.

25.     Defendants are subject to the jurisdiction of the Director of Insurance, and thus are each an "insurer" as defined by GIPA.

26.     Defendants issue and administer various life insurance products and are licensed to sell life insurance in Illinois. They form one of the largest life insurance companies in the nation known as Prudential.

27.     As part of their underwriting practices, Defendants require applicants to undergo a medical physical examination.

28.     These physical examinations are performed by third-party healthcare providers under HIPAA.

29.     Furthermore, these medical physical examinations also involve a questionnaire about the applicants' family medical history. As such, as part of the application process for Defendants' life insurance coverage, "protected health information that is genetic information" is created by the third-party healthcare providers used by Defendants, which is then provided to Defendants themselves.

30.     Defendants then use this protected health information that is genetic information in connection with their rules for determining eligibility for insurance coverage, to assess applicants' eligibility for insurance coverage, and to compute their premiums.

### FACTS SPECIFIC TO PLAINTIFF

31.     In or around May of 2023, Plaintiff Brynn Thompson applied for life insurance coverage offered by Defendants Prudential in Effingham, Illinois.

32.     As part of Defendants' underwriting process, and as a precondition of insurance coverage, Defendants required Plaintiff to undergo a medical physical examination conducted by American Para Professional Systems, Inc. ("APPS") commonly known as APPS-Portamedic.

33.     APPS-Portamedic is a healthcare provider that is one of the largest providers in the nation of medical and paramedical services.

34.     During the medical examination, APPS-Portamedic's medical staff required Plaintiff to answer questions concerning her family medical history, *i.e.* the manifestation of diseases or disorders in her family members. Such questions included whether Plaintiff's family members had a history of cancer, diabetes, heart disease, and other medical conditions.

35.     In response, Plaintiff answered and disclosed information regarding her family members' inheritable diseases and disorders. APPS-Portamedic documented Plaintiff's answers regarding her present and future condition and collected the same.

36.     APPS-Portamedic's medical team also collected a blood sample from Plaintiff and sent it to a laboratory for testing.

37.     In sum, APPS-Portamedic created "protected health information that is genetic information" relating to Plaintiff's genetics, and shared it with Defendants.

38.     Defendants then used this protected health information that included genetic information to assess Plaintiff's eligibility for life insurance coverage in accordance to its rules for determining eligibility.

39.     Thus, Plaintiff's sensitive genetic information was considered and used by Defendants for underwriting purposes, including the assessment of her eligibility for life insurance coverage, in violation of GIPA.

40.     By failing to comply with GIPA, Defendants have violated Plaintiff's substantive state rights to genetic privacy.

## CLASS ACTION ALLEGATIONS

41.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this action on her own behalf and on behalf of a class (the "Class") defined as follows:

> Class:  All individuals who, according to Defendants' records, applied for insurance coverage with Defendants in Illinois and who provided genetic information to a healthcare provider that was used by Defendants for underwriting purposes within the applicable limitations period.

42.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendants; and any immediate family member of such officers or directors.

43.     Upon information and belief, there are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendants' records.

44.     Plaintiff's claims are typical of the claims of the members of the Class Plaintiff seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other members of the Class are the same, and because Defendants' conduct has resulted in similar violations to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all been aggrieved by Defendants' GIPA violations.

45.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

a.     Whether Defendants' conduct is subject to GIPA;

b.     Whether Defendants obtained Plaintiff's and the other Class members' genetic information from a healthcare provider;

c.     Whether Defendants used such information for underwriting purposes in violation of 410 ILCS 513/20(b);

d.     Whether Defendants' violations of GIPA were negligent;

e.     Whether Defendants' violations of GIPA were reckless or intentional; and

f.     Whether Plaintiff and the Class are entitled to damages and injunctive relief.

9

46.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

47.     Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

48.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## <u>COUNT I</u>
**Violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.***
**(On behalf of Plaintiff and the Class)**

49.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50.     Defendants are registered with the Illinois Department of Insurance, are subject to the jurisdiction of the Director of Insurance, and therefore are each an "insurer" under GIPA. 410 ILCS 513/10.

51.     Under GIPA, an insurer shall not use protected health information that is genetic information for underwriting purposes. 410 ILCS 513/20(b). "Underwriting purposes" as defined

by GIPA includes rules for or the determination of eligibility (including enrollment) for life insurance coverage. 410 ILCS 513/20(b)(1).

52.     GIPA defines "genetic information" by reference to HIPAA as specified in 45 C.F.R. § 160.103 to include the manifestation of a disease or disorder in family members of an individual.

53.     GIPA defines "protected health information" by reference to HIPAA as specified in C.F.R. § 160.103 to include health information that is created by a healthcare provider.

54.     APPS-Portamedic is a healthcare provider as specified in C.F.R. § 160.103.

55.     Plaintiff and the Class underwent medical physical exams performed by APPS-Portamedic, a healthcare provider, during which questions regarding their family medical history, *i.e.* the manifestation of a disease or disorder in family members were asked.

56.     As such, APPS-Portamedic collected Plaintiff's and the other Class members protected health information that is genetic information.

57.     Defendants then obtained and used this information for underwriting purposes by, *inter alia*, using it to assess Plaintiff and the Class members' eligibility for life insurance coverage.

58.     Thus, Defendants used Plaintiff's and the Class members' genetic information in violation of the GIPA.

59.     Plaintiff and the Class also provided accompanying personal identifying information, including their full names, home addresses, date of birth, Social Security information and gender to APPS-Portamedic as part of their life insurance applications and during the medical physical exams they underwent.

60.     The information obtained from Plaintiff and the Class by Defendants is the type of information protected by GIPA. 410 ILCS 513/10.

61.     Plaintiff and the other Class members have been aggrieved by Defendants' above violations of their statutorily protected rights to privacy in their genetic information as set forth in GIPA.

62.     GIPA provides for statutory damages of $15,000 for each reckless or intentional violation of GIPA and, alternatively, damages of $2,500 for each negligent violation of GIPA. 410 ILCS 513/40(a)(3).

63.     Defendants' violations of GIPA, a statute that has been in effect since 1998, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with GIPA.

64.     Accordingly, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brynn Thompson, individually and on behalf of the proposed Class, respectfully requests that this Court enter an Order:

a.  Certifying the Class as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

b.  Declaring that Defendants' actions, as set forth herein, violate GIPA;

c.  Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with GIPA;

d.  Awarding statutory damages of $15,000 for each reckless or intentional violation of GIPA pursuant to 410 ILCS 513/40(a)(3);

e.  Awarding statutory damages of $2,500 for each negligent violation of GIPA pursuant to 410 ILCS 513/40(a)(3);

    f.   Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 410 ILCS 513/40(a)(3);

    g.   Awarding pre- and post-judgment interest, as allowable by law; and

    h.   Such further and other relief the Court deems reasonable and just.

## <u>JURY DEMAND</u>

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: February 21, 2024

Respectfully submitted,

BRYNN THOMPSON, individually and on behalf of similarly situated individuals,

By:   /s/ Andrew T. Heldut
       *One of Plaintiff's Attorneys*

Eugene Y Turin
Timothy P. Kingsbury
Andrew T. Heldut
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

13