**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BRYNN THOMPSON, individually and on behalf of similarly situated individuals, | ) ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 3:23-cv-03904 |
| v. | ) | |
| | ) | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, and PRUCO LIFE INSURANCE COMPANY, an Arizona corporation, | ) ) ) ) | Hon. Nancy J. Rosenstengel |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................... 2

   I.   GIPA .............................................................................................................. 2

   II.   Plaintiff's Life Insurance Application .......................................................... 3

   III.   Procedural History ....................................................................................... 5

ARGUMENT .............................................................................................................. 5

   I.   The GIPA Provision Invoked by Plaintiff Does Not Apply to Life Insurance. ................... 6

     A.   By Its Plain Language, 410 ILCS 513/20(b) Does Not Apply to Information Created or Received by Defendants or APPS. ....................... 6

     B.   Other Aids of Statutory Construction Unanimously Affirm that Life Insurers Are Exempt from the Coverage of 410 ILCS 513/20(b). ................ 9

       i.   GIPA's Structure Shows that 410 ILCS 513/20(b) Only Applies to the Underwriting of Health Insurance, Not Life Insurance. ..................... 10

       ii.   GIPA's Legislative History Shows the Legislature Intended to Exempt Life Insurers from Its Coverage Except Where Life Insurance is Explicitly Mentioned. ....................... 11

       iii.   Pending Proposals to Amend GIPA Evince the Legislature's Understanding that 410 ILCS 513/20(b) Does Not Currently Apply to Life Insurance. ....................... 14

       iv.   The Department of Insurance's Treatment of GIPA Demonstrates that 410 ILCS 513/20(b) Does Not Currently Apply to Life Insurance. ....................... 15

   II.   Plaintiff Has Failed to Meet the Notice Pleading and Plausibility Standards for Nearly Every Element of Her Claim. ....................... 16

     A.   Plaintiff Has Not Adequately Alleged the Existence of Any "Genetic Information." ... 16

     B.   Plaintiff's Denial Letter Shows that Defendants Did Not Use Any of Plaintiff's Protected Information "For Underwriting Purposes." ....................... 18

     C.   Plaintiff Has Not Adequately Alleged That Any Purported GIPA Violations Were "Knowing and Willful." ....................... 18

     D.   Plaintiff Cannot Maintain a Claim Against Defendant PICA and, Accordingly, Cannot Purport to Represent a Class Against It. ....................... 19

CONCLUSION ....................................................................................................... 20

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
   683 F.3d 328 (7th Cir. 2012) ................................................................. 6

*Allen v. Verizon Wireless*,
   2013 WL 2467923 (D. Conn. June 6, 2013) ......................................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................... 16

*Bailey v. United States*,
   516 U.S. 137, 116 S. Ct. 501 (1995) ..................................................... 11

*Bank of Am., N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ................................................................ 19

*Beard v. City of Chicago*,
   2005 WL 66074 (N.D. Ill. Jan. 10, 2005) .............................................. 9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................... 16

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ................................................................ 16

*Bower v. Jones*,
   978 F.2d 1004 (7th Cir. 1992) ............................................................... 6

*Brownsburg Area Patrons Affecting Change v. Baldwin*,
   137 F.3d 503 (7th Cir. 1998) ................................................................. 6

*Commonwealth Edison Co. v. Illinois Com. Comm'n*,
   16 N.E.3d 801 (Ill. App. Ct. 2014) ............................................... 6, 7, 15

*Conner-Goodgame v. Wells Fargo Bank, N.A.*,
   2013 WL 5428448 (N.D. Ala. Sept. 26, 2013) ...................................... 17

*Dorman v. Madison Cnty.*,
   2022 WL 874733 (S.D. Ill. Mar. 24, 2022) ..................................... 19, 20

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120, 120 S. Ct. 1291 (2000) ................................................... 10

*Green v. Whataburger Restaurants LLC*,
    2018 WL 6252532 (W.D. Tex. Feb. 22, 2018)........................................................17

*Harris v. U.S. Bank*,
    2017 WL 4157361 (S.D. Ill. Sept. 19, 2017)....................................................5, 6

*Harvey v. Brookhart*,
    2020 WL 418880 (S.D. Ill. Jan. 27, 2020)......................................................19

*Kaminski v. Elite Staffing, Inc.*,
    23 F.4th 774 (7th Cir. 2022) ..........................................................................16

*Kukovec v. Estée Lauder Cos., Inc.*,
    2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ...............................................19

*Maschek v. City of Chicago*,
    46 N.E.3d 843 (Ill. App. Ct. 2015) ..........................................................11, 12

*Meds, Inc. v. Mississippi Dep't of Emp. Sec.*,
    130 So. 3d 148 (Miss. Ct. App. 2014) ..........................................................4

*People v. Bowden*,
    730 N.E.2d 138 (Ill. App. Ct. 2000) ................................................7, 14, 15

*People v. Miles*,
    86 N.E.3d 1210 (Ill. App. Ct. 2017) ..............................................................10

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) ........................................................................1

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ..........................................................................5

*Smith v. Medical Benefit Administrators Group, Inc.*,
    639 F.3d 277 (7th Cir. 2011) ..........................................................................5

*Stewart v. Nw. Mut. Life Ins. Co.*,
    180 F. Supp. 3d 566 (N.D. Ill. 2016) ..........................................................16

*Sullivan v. All Web Leads, Inc.*,
    2017 WL 2378079 (N.D. Ill. June 1, 2017)................................................8, 9

*Tedesco v. Pearson Educ., Inc.*,
    2021 WL 2291148 (E.D. La. June 4, 2021)................................................17

*United States v. Miscellaneous Firearms, Explosives, Destructive Devices &*
    *Ammunition*,
    376 F.3d 709 (7th Cir. 2004) ..................................................................10, 11

iii

*United States v. Stewart*,
   311 U.S. 60, 61 S. Ct. 102 (1940) .................................................................10

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
   987 F.2d 429 (7th Cir. 1993) ........................................................................... 1

*People ex rel. Vuagniaux v. City of Edwardsville*,
   672 N.E.2d 40 (Ill. App. Ct. 1996) ........................................................... 10, 11

*Wachovia Sec., LLC v. Banco Panamericano, Inc.*,
   674 F.3d 743 (7th Cir. 2012) .........................................................................20

*Wolf Designs LLC v. Five 18 Designs LLC*,
   635 F. Supp. 3d 787 (D. Ariz. 2022) ..............................................................20

**Statutes**

Health Insurance Portability and Accountability Act, 42 U.S.C. 1320d *et seq.* .................... *passim*

Genetic Information Privacy Act, 410 ILCS 513/1 *et seq.* ................................................... *passim*

215 ILCS 5/4 ........................................................................................................16

215 ILCS 5/356v ...................................................................................................11

215 ILCS 5/370 .....................................................................................................15

215 ILCS 5/401 .....................................................................................................15

410 ILCS 513/5 .....................................................................................................13

410 ILCS 513/10 ...........................................................................................7, 14, 18

410 ILCS 513/20 ............................................................................................. *passim*

410 ILCS 513/40 ...................................................................................................15

**Slip Laws/Session Laws**

Genetic Information Nondiscrimination Act, Pub. L. No. 110-233, 122 Stat. 881 .............3, 17, 18

Act Concerning Health, Pub. Act 98-1046, 2014 Ill. Legis. Serv. 5221 ...........................3, 18, 19

Genetic Information Privacy Act, Pub. Act 90-25, 1997 Ill. Legis. Serv. 1419 ...........................2

**Regulations**

45 C.F.R. § 160.102 ...............................................................................................13

iv

45 C.F.R. § 160.103 ..............................................................................................7, 8, 14, 18

45 C.F.R. § 164.502 ...............................................................................................................11

78 Fed. Reg. 5566 (Jan. 25, 2013) .........................................................................................3

50 Ill. Adm. Code § 2001.9...................................................................................................16

50 Ill. Adm. Code § 2008.107...............................................................................................16

**Legislative History**[i]

H.R. Tr. 90-43, Reg. Sess. (Ill. 1997) ........................................................................2, 12, 13

S. Tr. 90-26, Reg. Sess. (Ill. 1997) ...............................................................................1, 12

S. Tr. 90-27, Reg. Sess. (Ill. 1997) ...............................................................................2, 12

S. Tr. 90-47, Reg. Sess. (Ill. 1997) ....................................................................................12

S. Tr. 98-123, Reg. Sess. (Ill. 2014) ...................................................................................13

**Other Authorities**

Fed. R. Civ. P. 8.............................................................................................................16, 19

Fed. R. Civ. P. 12 ...................................................................................................................5

H.R. 4142, 103rd Gen. Assemb., Reg. Sess. (Ill. 2023) ...................................................15

S. 68, 103rd Gen. Assemb., Reg. Sess. (Ill. 2023)...................................................14, 15

---

[i] For the Court's convenience, copies of the legislative history transcripts cited in this Memorandum of Law are included in the Appendix.

The Genetic Information Privacy Act[2] ("GIPA") simply does not apply to life insurance.[3] Apparently recognizing the clear deficiencies in her initial claim, Plaintiff Brynn Thompson filed the First Amended Class Action Complaint, Dkt. 24 (the "FAC"), rather than oppose the motion to dismiss it. But Plaintiff's changes to her pleading do not—and cannot—fix its problems. GIPA's statutory language, structure, legislative history, and a proposed amendment to the law itself confirm that GIPA does not apply to life insurance. *See* Dkt. 15, 16. Indeed, immediately before the law's passage, one of GIPA's principal sponsors explained: "**It's always been our intention to exclude life insurance from the coverage of this bill**." S. Tr. 90-26, Reg. Sess., at 44 (Ill. 1997). Yet, Plaintiff persists in her first-of-its-kind lawsuit against The Prudential Insurance Company of America ("PICA") and Pruco Life Insurance Company ("Pruco") (collectively, "Defendants") for allegedly using her "genetic information" to deny life insurance coverage. This theory is not supported by the law and should be dismissed.

Even setting aside the statute's plain language and the clear legislative history, dismissal is warranted for the independent reason that Plaintiff's conclusory allegations do not state a claim. Plaintiff neither identifies any purported genetic information nor explains how Defendants allegedly used that information in violation of GIPA. Moreover, Plaintiff's application and denial letter, properly considered here,[4] demonstrate that Plaintiff did not provide any family medical

---

[2] 410 ILCS 513/1 *et seq.*

[3] There is one exception, not applicable here. 410 ILCS 513/20(e) prohibits a "company providing direct-to-consumer commercial genetic testing . . . from sharing any genetic test information . . . with any health or life insurance company without written consent from the consumer."

[4] At this stage, the Court may properly consider Plaintiff's life insurance application and denial letter as "[d]ocuments that a defendant attaches to a motion to dismiss [that] are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also* FAC ¶¶ 31–38. This proposition holds true even though the application and denial letter contradict the FAC's allegations. *See, e.g., Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

history to Defendants, but was instead denied coverage based on her *own* medical conditions. Notably, the FAC contains no amendments from the original pleading to address these palpable pleading deficiencies. Because Plaintiff fails to plead any element of her claim, under a statute that does not even apply to Defendants, dismissal is appropriate. Moreover, because the FAC is Plaintiff's second failed attempt to state a claim, this dismissal should be with prejudice.

## BACKGROUND

### I.      GIPA

As the availability of genetic testing expanded in the 1990s, members of the Illinois General Assembly became concerned with the potential discriminatory use of such testing. FAC ¶¶ 18–21. Consequently, in 1998, the legislature passed GIPA. *Id.* ¶ 21. When originally enacted, GIPA did not reference "genetic information" (referencing only "genetic testing and information derived from genetic testing") or life insurance. *See generally* Genetic Information Privacy Act, Pub. Act 90-25, 1997 Ill. Legis. Serv. 1419. Indeed, before the law's passage, GIPA's sponsors amended the bill with the express purpose of removing any potential reference to life insurance, as their stated "objective was to make sure there is no discrimination on other insurance, essentially health insurance and employment." *See* H.R. Tr. 90-43, Reg. Sess., at 184 (Ill. 1997) (statement of Rep. Moffitt). As the bill's Senate sponsor put it:

> In our second amendment, we agreed to accept the language of the Life Insurance Council as to what constitutes genetic testing . . . . We also have exempted—one of the other objections was that life insurance could be a problem, that someone could be tested and find out that there's a—a long-term problem and run out and purchase life insurance without disclosing that information. **We have removed life insurance from this bill**, and, specifically, in Amendment No. 2, we took out a paragraph that the Life Insurance Council objected to.

S. Tr. 90-27, Reg. Sess., at 143 (Ill. 1997) (statement of Sen. Hawkinson). The bill's House sponsor agreed, assuring multiple times that "[l]ife insurance is not included" and that the bill "does not apply to life insurance as it's written." H.R. Tr. 90-43, Reg. Sess., at 190–91 (Ill. 1997).

Over fifteen years later, on January 25, 2013, the United States Department of Health and Human Services adopted a final rule "modifying the HIPAA[5] Privacy Rule as required by the Genetic Information Nondiscrimination Act[6] (GINA) to prohibit most health plans from using or disclosing genetic information for underwriting purposes." 78 Fed. Reg. 5566, 5566 (Jan. 25, 2013). The Illinois General Assembly followed in 2014 by enacting the GIPA provision under which Plaintiff sues: 410 ILCS 513/20(b) (hereinafter "Section 20(b)").[7] This provision incorporated HIPAA's new language prohibiting the "use or disclos[ure of] protected health information that is genetic information for underwriting purposes." As the amendment's sponsor noted, she sought to update GIPA and other statutes to mirror the recent amendments to state and federal HIPAA laws—two statutes that do not apply to life insurance. Notably, Section 20(b) passed unanimously. The language of Section 20(b) has not changed since 2015.

GIPA's only reference to life insurance comes from provisions added in 2020 to address direct-to-consumer genetic testing. *See* 410 ILCS 513/20(e). No other parts of GIPA address life insurance, and the 2020 amendments did not affect Section 20(b). In fact, the General Assembly is now considering bills that would expressly apply prohibitions comparable to those in Section 20(b) to life insurance, recognizing that it is not currently covered.

## II.    Plaintiff's Life Insurance Application

On or about May 18, 2023, Plaintiff applied for term life insurance with Defendant Pruco. *See* Declaration of Debra Bogo-Ernst, Ex. A, at 6. As part of that process, Plaintiff completed a written application. The application's first part asked: "Have any immediate family members (mother, father, brother, sister) been diagnosed with or died from coronary artery diseases,

---

[5] Health Insurance Portability and Accountability Act, 42 U.S.C. 1320d *et seq.* ("HIPAA").

[6] Pub. L. No. 110-233, 122 Stat. 881.

[7] *See* Act Concerning Health, Pub. Act 98-1046, 2014 Ill. Legis. Serv. 5221, 5241.

cerebrovascular disease, diabetes or cancer before age 70?" *Id.* at 4. Plaintiff submitted her application without answering this question or providing any details about her family. *Id.* No other question in Part 1 of the application asked about family medical history. *See generally id.*

On June 16, 2023, Plaintiff had a physical exam as Part 2 of her life insurance application. *See* Bogo-Ernst Decl., Ex. B. An agent of American Para Professional Systems, Inc. ("APPS") completed the exam. *Id.* at 1; FAC ¶ 32. APPS is "a paramedical company that provides medical testing for individuals seeking insurance coverage," *not* for individuals seeking health care. *Meds, Inc. v. Mississippi Dep't of Emp. Sec.*, 130 So. 3d 148, 149 (Miss. Ct. App. 2014). The physical exam included the same question about family history. Bogo-Ernst Decl., Ex. B, at 2. This time, the box for "No" was marked in response. *Id.* The exam form was submitted without any information about Plaintiff's family members other than their ages. *Id.*

The FAC alleges that APPS also took a blood sample from Plaintiff for testing, FAC ¶ 36, although Plaintiff's application shows only that a urine sample was collected, Bogo-Ernst Decl., Ex. B at 5. *See generally id.* (lacking a space to even indicate that a blood sample might be collected). APPS also collected information about Plaintiff's *past* medical diagnoses and treatments. *Id.* at 3–4. The only other information collected during Plaintiff's physical exam included her height, weight, blood pressure, pulse, and information about Plaintiff's menses. *Id.* at 5. In response to a question in Part 2 asking "Is the person examined your patient?" the APPS examiner marked the box for "No." *Id.* Neither the FAC nor Plaintiff's application contains any suggestion that Plaintiff obtained a diagnosis or medical treatment of any kind from APPS. *See generally id.*; FAC.

On June 26, 2023, Pruco sent Plaintiff a denial letter. Bogo-Ernst Decl., Ex. C. The letter

cited Plaintiff's *own* medical history and did not refer to any member of Plaintiff's family.[8] *Id.*

### III.   Procedural History

On October 30, 2023, Plaintiff filed her original complaint in state court in Effingham County, Illinois. *See* Dkt. 1-1. On December 11, 2023, Defendants removed the case to this Court. Dkt. 1.

On January 31, 2024, Defendants moved to dismiss the complaint. *See* Dkt. 15, 16, 16-1, 17, 20. On February 21, 2024, Plaintiff responded to Defendants' original motion to dismiss by filing the FAC. *See* Dkt. 24. The FAC asserts one cause of action, alleging Defendants violated Section 20(b) by purportedly using Plaintiff's "genetic information" for "underwriting purposes." FAC ¶¶ 49–64. Like the original complaint, the FAC does not identify what Plaintiff allegedly said about her family members' medical conditions, nor does it identify which of those conditions Defendants allegedly used to deny Plaintiff's life insurance application. *See generally id.*

### ARGUMENT

Plaintiff fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). "[S]urviving a Rule 12(b)(6) motion requires more than labels and conclusions," and "the complaint's allegations must 'raise a right to relief above the speculative level.'" *Harris v. U.S. Bank*, 2017 WL 4157361, at *2 (S.D. Ill. Sept. 19, 2017) (quoting *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008)). "A plaintiff's claim 'must be plausible on its face,' that is, 'the complaint must establish a non-negligible probability that the claim is valid.'" *Id.* (quoting *Smith v. Medical Benefit Administrators Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011)). The FAC fails this standard.

Moreover, dismissal should be with prejudice because Plaintiff cannot cure her claim's

---

[8] The letter also provided that Plaintiff was "entitled to know the specific information we used and the source of that information" and gave Plaintiff 90 days to request "more information about [Pruco's] decision." *Id.*

deficiencies by re-pleading, as the FAC's persistent inadequacy demonstrates. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012) ("[A] district court is not required to grant [leave to amend] when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted."). The Court may dismiss a complaint with prejudice where any proposed amendment would be futile, *Harris*, 2017 WL 4157361, at *4, such as where "it fails to state a valid theory of liability or could not withstand a motion to dismiss." *Bower v. Jone*s, 978 F.2d 1004, 1008 (7th Cir. 1992) (citation omitted). Here, among other things, GIPA forecloses Plaintiff's claim. Furthermore, the life insurance application underlying Plaintiff's claim contradicts her theory of liability. Neither the FAC nor any theoretical future amendment can save Plaintiff's GIPA claim.

## I.      The GIPA Provision Invoked by Plaintiff Does Not Apply to Life Insurance.

In determining whether Plaintiff's life insurance application is subject to GIPA, the Court must start with the statutory construction principles of Illinois courts. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998). In Illinois, "[t]he cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *Commonwealth Edison Co. v. Illinois Com. Comm'n*, 16 N.E.3d 801, 808 (Ill. App. Ct. 2014) (citations omitted). The statutory interpretation tools available—including the statute's plain language, its structural context, its legislative history, and its interpretation by administrative agencies—all point to a single conclusion: Section 20(b) does not apply to life insurance.

### A. By Its Plain Language, 410 ILCS 513/20(b) Does Not Apply to Information Created or Received by Defendants or APPS.

The GIPA provision cited in the FAC only applies to health insurance—not life insurance. "The best indicator of the legislature's intent is the express language of the statute, which should be given its plain and ordinary meaning. When the language of a statute is clear and unambiguous,

6

it must be applied without resort to other aids of construction." *Id.* (citations omitted). "A court cannot read into a statute words that are not within the intention of the legislature as determined from the statute, nor can a court restrict or enlarge the meaning of a statute." *People v. Bowden*, 730 N.E.2d 138, 142 (Ill. App. Ct. 2000) (citation omitted). This last principle is especially salient where, as here, the Plaintiff's theory of liability is novel and untested.

On its face, Section 20(b) does not apply to information generated or received by parties that are not "health care providers," as HIPAA defines that term. Plaintiff contends that Defendants used her "genetic information" to assess her life insurance eligibility in violation of Section 20(b). FAC ¶ 38; *see also id*. ¶¶ 30, 51. But as the FAC's additions concede, Section 20(b) applies only to "*protected health information* that is genetic information," (emphasis added), not to *all* genetic information. *See id.* ¶¶ 30, 38, 51 (adding new references to "protected health information").

That qualification undoes Plaintiff's claim. GIPA borrows HIPAA's definition of protected health information ("PHI"). 410 ILCS 513/10 (referencing HIPAA's definitions). PHI "means individually identifiable health information," which is defined as:

> [I]nformation that is a subset of health information . . . and: (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; ***and*** (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; ***and*** (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103 (emphases added). Those elements are not, and cannot be, alleged here.

Even with the FAC's amendments, Plaintiff cannot satisfy subpart (1) of the "individually identifiable health information" definition, which requires that information be "created or received by a health care provider, health plan, employer, or health care clearinghouse." Defendants are

7

none of these entities, which are defined in 45 C.F.R. § 160.103,[9] and Plaintiff does not allege that they are. Nor could she, as she expressly alleges that Defendants are life insurers.

Faced with this obstacle, Plaintiff now claims that APPS, the third-party vendor who allegedly collected family medical history, is somehow a "healthcare provider[] under HIPAA." FAC ¶ 28. This attempt to save her claim fails. Under 45 C.F.R. § 160.103, "Health care provider means a provider of services . . . , a provider of medical or health services . . . , and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business." APPS does not meet this definition.

To start, Plaintiff does not (and cannot) allege that APPS is a "[p]rovider of services," *i.e.*, "a hospital, critical access hospital, rural emergency hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or [for certain purposes] a fund." 42 U.S.C. § 1395x(u). Likewise, Plaintiff does not (and cannot) allege that APPS is a provider of "[m]edical and other health services," which includes a finite list of approximately 50 medical tests and treatments. *See* 42 U.S.C. § 1395x(s). Per the FAC and Part 2 of Plaintiff's application, the only services APPS performed—asking Plaintiff about her medical history, taking her vital signs, and collecting her urine and (allegedly) her blood, all with the sole purpose of assisting Pruco in evaluating Plaintiff's application—do not fall within any of the 42 U.S.C. § 1395x(s) categories. Finally, Plaintiff does not allege that APPS furnishes or bills for health care in the normal course of business, where 45 C.F.R. § 160.103 defines "health care" as "care, services, or supplies related to the health of an individual." *See Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079, at *6 (N.D. Ill. June 1, 2017) (finding that even telephone calls related to *health* insurance enrollment were "hopelessly divorced" from the HIPAA definition of "health

---

[9] The full definitions of each of these terms under HIPAA regulations are included in the Appendix.

care"). APPS merely collected information from Plaintiff for purposes wholly unrelated to health care. *Cf. Beard v. City of Chicago*, 2005 WL 66074, at *2 (N.D. Ill. Jan. 10, 2005) (observing that an entity is likely not a health care provider under HIPAA where it does not "actually provide[] medical care" but, rather, "it evaluates medical conditions . . . *not for the purpose of treatment*, but for the purpose of determining fitness to return to work") (emphasis added).

Thus, by the plain language of the statute and the federal regulations it incorporates, the alleged information at issue was not "protected health information." This strips the information of any putative protection under Section 20(b).

Likewise, the information Plaintiff supplied in her application and physical exam does not meet subpart (2) of the "individually identifiable health information" definition, including either of subparts (i) and (ii). Plaintiff does not substantively allege that the family history purportedly received by Defendants "[r]elate[d] to the past, present, or future physical or mental health or condition of an individual," or that it "identifie[d] the individual" or supplied "a reasonable basis to believe the information can be used to identify the individual." Plaintiff has not alleged, and cannot allege, that the information she provided spoke to a family member's physical or mental health or condition, *see* Section II.A, *infra*, or that the information included identifying information for any of her family members (it did not). The absence of these elements similarly dooms Plaintiff's GIPA claim.

### B. Other Aids of Statutory Construction Unanimously Affirm that Life Insurers Are Exempt from the Coverage of 410 ILCS 513/20(b).

Although the Court need not look beyond GIPA's plain language to conclude that it does not apply to Plaintiff's life insurance application, doing so only buttresses that conclusion. The structure of the statute, its legislative history, and its interpretation by administrative agencies all confirm that life insurance is categorically excluded from Section 20(b).

> **i.    GIPA's Structure Shows that 410 ILCS 513/20(b) Only Applies to the Underwriting of Health Insurance, Not Life Insurance.**

"When interpreting a statute, [courts] do not read a portion of it in isolation; instead, [they] read it in its entirety, keeping in mind the subject it addresses and the drafters' apparent objective in enacting it." *People v. Miles*, 86 N.E.3d 1210, 1215 (Ill. App. Ct. 2017) (citation omitted). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291 (2000) (citation omitted). Furthermore, "all acts in pari materia"—that is, acts that "deal with precisely the same subject matter"—"are to be taken together, as if they were one law." *United States v. Stewart*, 311 U.S. 60, 64, 61 S. Ct. 102 (1940) (citation omitted). In Illinois, the *in pari materia* canon is "especially true where the statutes were passed the same day and are to take effect the same day." *People ex rel. Vuagniaux v. City of Edwardsville*, 672 N.E.2d 40, 44 (Ill. App. Ct. 1996).

Read in context, Section 20(b) plainly does not apply to life insurance. *First*, that section, which prohibits the use or disclosure of "protected health information that is genetic information for underwriting purposes," defines "underwriting purposes" in four ways. Read together, these definitions demonstrate that Section 20(b) only applies to health insurance. Plaintiff tries to state a claim under the first definition, *i.e.*, "rules for, or determination of, eligibility (including enrollment and continued eligibility) for, or determination of, benefits under the plan, coverage, or policy." *See* FAC ¶ 57; *see also id*. ¶¶ 8, 38, 51. The language of the first definition (like the second and third definitions, which are not relevant here) does not expressly limit itself to health insurance. *See* 410 ILCS 513/20(b)(1)–(3). But to end the analysis there would endorse an interpretation "inconsistent with [GIPA's] structure and context." *See United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th

10

Cir. 2004) (citation omitted). The fourth and final definition is a catchall that encompasses "*[o]ther* activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits." 410 ILCS 513/20(b)(4) (emphasis added). The use of "[o]ther" in the statute's catchall demonstrates that the first three definitions are non-exhaustive examples of "activities related to . . . a contract of **health insurance or health benefits**." Accordingly, Plaintiff's attempt to apply 410 ILCS 513/20(b)(1) to purported *life* insurance activities (rather than health insurance activities) would "render other provisions of the statute"—namely, 410 ILCS 513/20(b)(4)— "inconsistent, meaningless, or superfluous." *See Miscellaneous Firearms,* 376 F.3d at 712 (citing *Bailey v. United States*, 516 U.S. 137, 145, 116 S. Ct. 501 (1995)). This conclusion is bolstered by the fact that GIPA's definition of "underwriting purposes" substantially mirrors HIPAA's definition, which does not apply to life insurers. 45 C.F.R. § 164.502(a)(5)(i) (applying analogous restriction only to a "health plan").

*Second*, a provision added to the Illinois Insurance Code concurrently with GIPA's enactment supplies additional evidence that it does not apply to life insurance. 215 ILCS 5/356v, which was passed and became effective simultaneously with GIPA, dictates that "an insurer must comply with the provisions of [GIPA] in connection with the amendment, delivery, issuance, or renewal of, or claims for or denial of coverage under, an individual or group policy of **accident and health insurance**." (Emphasis added.) The notable omission of life insurance here further confirms that it is beyond GIPA's scope. *See Vuagniaux*, 672 N.E.2d at 44 (acts *in pari materia* should be construed as "to give force and effect to the provisions of each").

> ii.     **GIPA's Legislative History Shows the Legislature Intended to Exempt Life Insurers from Its Coverage Except Where Life Insurance is Explicitly Mentioned.**

Although Illinois courts do not look beyond clear statutory language, they do give weight to legislative history where they find a potential ambiguity, considering "the statute's legislative

11

history and debates," "especially [ ] the remarks of a bill's sponsor." *Maschek v. City of Chicago*, 46 N.E.3d 843, 852–54 (Ill. App. Ct. 2015). "The remarks made immediately prior to passage are particularly important." *Id*. at 854. The debates around GIPA's original enactment and its 2014 amendment are clear that the Illinois legislature deliberately exempted life insurers from GIPA.

(a) *The Legislative History of GIPA's Original Enactment Demonstrates that Life Insurance Was Intentionally Excluded.*

Prior to GIPA's original enactment in 1997, the bill's Senate sponsor, Carl E. Hawkinson, explained: "[T]here was a paragraph in there dealing with life insurance. **It's always been our intention to exclude life insurance from the coverage of this bill**, and we accepted the suggestion of the industry to remove the paragraph that they had some questions about." S. Tr. 90-26, Reg. Sess., at 44 (Ill. 1997) (emphasis added). Senator Hawkinson and his cosponsors were concerned with the harm from denials of health insurance—tantamount for many to denial of health care itself. For example, immediately prior to GIPA's passage, Senator Hawkinson explained that he sponsored the bill after hearing a constituent recount how a doctor discouraged testing for ovarian cancer genetic markers because the results "can be used to discriminate against you and your daughters on the basis of their *health* insurance and—and their employment." S. Tr. 90-27, Reg. Sess., at 142 (emphasis added). The Senator made no mention of similar concerns about denials of life insurance, which have no analogous health or employment consequences. Following this debate, the Senate proceeded to unanimously approve the bill. *Id*. at 146; S. Tr. 90-47, Reg. Sess., at 2–3 (Ill. 1997) (approval of "identical" bill).

In the corresponding House floor debates, the bill's primary sponsor there, Donald L. Moffitt, explained that the new bill differed from a previous, failed bill because it "does not include life insurance." H.R. Tr. 90-43, Reg. Sess., at 184 (Ill. 1997). In a later colloquy with Representative Dan Brady, Representative Moffitt reiterated multiple times that "[l]ife insurance

is not included in [GIPA]" and that GIPA "does not apply to life insurance as it's written." *Id*. at 190–91. Separately, Representative Sara Feigenholtz, Representative Moffitt's cosponsor who had also sponsored the previous version of the House bill, emphasized that: "[t]his is a Bill that is going to serve a huge portion of our population that's trying to access **medical** care." *Id*. at 188–89 (emphasis added). No legislator from either house suggested that GIPA's reach would (or should) extend beyond "health insurance and employment." *See generally id*. Following debate in the House, the bill passed 100-14-2. *Id*. at 200.

> (b) *The Legislative History of GIPA's 2014 Amendment Is Consistent with the Exclusion of Life Insurance.*

The amendment that added Section 20(b) passed both houses with virtually no debate. However, the amendment's Senate sponsor, Mattie Hunter, described the bill as "updat[ing] laws related to the disclosure of . . . genetic information to protect the disclosure of such personal health information according to both the [state] and the federal . . . HIPAA." S. Tr. 98-123, Reg. Sess., at 26 (Ill. 2014) (prior to unanimously passing the bill). It follows that the amendment did not intend to go further than HIPAA—a law that categorically applies to health insurance and health care only. *See* 45 C.F.R. § 160.102. Representative Moffitt, who repeatedly emphasized that the original 1998 bill did not apply to life insurance, voted in favor of the 2014 amendment without any remark about expanding the statute's reach.

The 2014 bill's amendment to GIPA's "Legislative findings; intent" provision also confirms that HIPAA and Section 20(b) are coterminous. 410 ILCS 513/5(5) expressly finds that "[l]imiting the use or disclosure of, and requests for, protected health information . . ., when being transmitted by or on behalf of a covered entity under HIPAA, is a key component of health information privacy." That is, the legislature intended Section 20(b) to rectify specific problems with the disclosure of genetic information "*when being transmitted by or on behalf of a covered*

*entity under HIPAA.*" "Covered entity" is defined in 410 ILCS 513/10 by reference to HIPAA regulations; for its part, HIPAA defines covered entity as "(1) A health plan. (2) A health care clearinghouse. [or] (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." Not only do Defendants and third party APPS fall outside HIPAA's definitions of health plan, health care clearinghouse, and health care provider, *see* Section I.A, *supra*, but the interaction between Defendants/APPS and Plaintiff is also not "covered by" HIPAA. *See* 45 C.F.R. § 160.103 (defining "transaction" to relate to "financial or administrative actions related to health care"). Applying Section 20(b) to Defendants thus would fly in the face of the legislature's intent.

*** ***

The legislative history is clear. The 1997 legislature took deliberate steps to exempt life insurance from GIPA's reach. The 2014 legislature did not countermand those steps; rather, it intended its amendments solely to make GIPA's protections congruent with those in HIPAA.

### iii.   Pending Proposals to Amend GIPA Evince the Legislature's Understanding that 410 ILCS 513/20(b) Does Not Currently Apply to Life Insurance.

The current legislature's activity further demonstrates that the proper reading of GIPA forecloses Plaintiff's claim. Current Senate Bill No. 68 would amend GIPA by adding a new subsection (f) to 410 ILCS 513/20 to cover life insurers:

> A health insurer, life insurer, or long-term care insurer authorized to transact insurance in this State may not: (1) cancel, limit, or deny coverage or establish differentials in premium rates based on a person's genetic information; or (2) require or solicit an individual's genetic information, use an individual's genetic test results, or consider an individual's decisions or actions relating to genetic information or a genetic test in any manner for any insurance purpose.

*See* S. 68, 103rd Gen. Assemb., Reg. Sess. (Ill. 2023). The Court should presume that the legislature only considers amendments that would actually add something to the law—here, expanding GIPA to life insurers. *See Bowden*, 730 N.E.2d at 141–42.

14

Notably, the proposed amendment would not modify Section 20(b). That subsection and the new subsection (f) would coexist if the amendment passes. *See* S. 68. It would defy logic for the legislature to add a new subsection that duplicates an existing subsection, then leave the existing subsection in the law. The logical inference is that the proposed subsection (f) is only under consideration because subsection (b) does **not** apply to life insurers. Moreover, the proposed amendment, if passed, would only apply prospectively to insurance contracts executed after January 1, 2024, confirming that it would add an entirely new prohibition to the law, rather than merely clarify language that is already in effect. *See id*.

Likewise, another pending bill seeks to amend the Insurance Code to require that "an insurer [ ] comply with the provisions of [GIPA] in connection with the amendment, delivery, issuance, or renewal of a life insurance policy; claims for or denial of coverage under a life insurance policy; or the determination of premiums or rates under a life insurance policy." *See* H.R. 4142, 103rd Gen. Assemb., Reg. Sess. (Ill. 2023). Because "[a]n interpreting court presumes an amendment of a statute is made to effect some purpose," *Bowden*, 730 N.E.2d at 141–42, these proposed amendments further evidence that GIPA does not apply to life insurance policies.

### iv. The Department of Insurance's Treatment of GIPA Demonstrates that 410 ILCS 513/20(b) Does Not Currently Apply to Life Insurance.

If a statute's meaning is not plain on its face, Illinois courts "will give substantial weight and deference to an interpretation by the agency charged with the administration and enforcement of the statute." *Commonwealth Edison*, 16 N.E.3d at 808. In GIPA's case, that agency is the Illinois Department of Insurance. *See, e.g.*, 410 ILCS 513/40(b); 215 ILCS 5/370(2); 215 ILCS 5/401.

To date, the Department of Insurance has treated "genetic information" as relevant to accident and health insurance **only**. The sole sections of the Illinois Administrative Code addressing genetic information apply exclusively to accident and health insurance. *See* 50 Ill. Adm.

Code § 2008.107 (Medicare supplements); § 2001.9 (group health plans). Under Illinois law, life insurance is a statutory category, mutually exclusive of accident and health insurance. 215 ILCS 5/4; *see also Stewart v. Nw. Mut. Life Ins. Co.*, 180 F. Supp. 3d 566, 574 (N.D. Ill. 2016). Plaintiff's unmoored interpretation of GIPA does not supplant the expertise of the Department of Insurance.

## II.    Plaintiff Has Failed to Meet the Notice Pleading and Plausibility Standards for Nearly Every Element of Her Claim.

Even if Section 20(b) applied to life insurance—and it does not—the FAC nevertheless fails to state a claim under the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), and even under the notice pleading standard of Fed. R. Civ. P. 8. Notably, a plurality of the FAC's sixty-four paragraphs are legal conclusions. *See, e.g.*, FAC ¶¶ 5, 9, 10, 15–17, 39–40, 41–42, 44–46, 48, 49, 51–54, 58, 60–61, 64. Several others are general propositions of law, *see, e.g., id.* ¶¶ 3–4, 7, 22–24, 62, or purport to convey GIPA's history, *see, e.g., id.* ¶¶ 2, 6, 18–21. This leaves few allegations that even mention Plaintiff or Defendants. Moreover, despite the long-recognized requirement to "provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action," *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022), most of the allegations that mention Defendants do no more than copy-and-paste GIPA's statutory text. *See, e.g.*, FAC ¶¶ 25, 30, 38, 50, 57, 63. Finally, because Plaintiff's application and denial letter refute essential elements of her claim, leave to further amend the FAC would be futile. *See Bogie v. Rosenberg*, 705 F.3d 603, 613 (7th Cir. 2013).

### A.  Plaintiff Has Not Adequately Alleged the Existence of Any "Genetic Information."

Plaintiff summarily alleges that Defendants denied her life insurance application based on their purported use of her genetic information, but she supports this claim with only a bare reference to questions allegedly asked in her physical examination. FAC ¶¶ 34–35. By its terms,

16

Section 20(b) does not bar requests for genetic information; rather, it bars only the "*use or disclos[ure]*" of genetic information, which logically cannot occur where no genetic information is even collected. Here, the FAC fails to allege Defendant's possession of any genetic information, and Plaintiff's life insurance application undermines the FAC's contrary innuendo.

*First*, Plaintiff's barebones allegation that Defendants **requested** some of Plaintiff's family medical history (FAC ¶ 34) fails to state a claim where the statute only penalizes the *use* or *disclosure* of information. The FAC goes on to allege that Defendants **collected** Plaintiff's answers to these purported questions about family medical history, *id.* ¶ 35, but even that allegation offers no support to a GIPA claim without identifying Plaintiff's answers. *See Green v. Whataburger Restaurants LLC*, 2018 WL 6252532, at *2 (W.D. Tex. Feb. 22, 2018) (dismissing GINA claim under an identical definition of "genetic information" where "Plaintiff claim[ed] that Defendant discriminated and retaliated against her," but did not "explain or provide any context to put Defendant on notice as to what her or her daughter's 'medical history' or 'genetic information' might be") (citation omitted); *see also Tedesco v. Pearson Educ., Inc.*, 2021 WL 2291148, at *6 (E.D. La. June 4, 2021) (father's suicide did not count as genetic information under GINA); *Conner-Goodgame v. Wells Fargo Bank, N.A.*, 2013 WL 5428448, at *11 (N.D. Ala. Sept. 26, 2013) (same as to mother's AIDS diagnosis). Numerous potential answers to the question Plaintiff identifies would not generate any genetic information; Plaintiff's bare reliance on a question's existence thus does not give Defendants notice of the genetic information allegedly used.

*Second*, Plaintiff's actual life insurance application demonstrates that her answers did not in fact generate genetic information. Specifically, during Plaintiff's physical examination, Plaintiff answered "No" to the only family history question. Bogo-Ernst Decl., Ex. B, at 2. Because both Plaintiff's parents were still living, the only information recorded in the family history section was

17

her parents' ages—which GIPA explicitly excludes from its definition of genetic information. 410 ILCS 513/10 (citing 45 C.F.R. § 160.103). Thus, not only has Plaintiff failed to identify the "genetic information" Defendants allegedly collected, but her application shows that Defendants did *not* collect any such information.

### B. Plaintiff's Denial Letter Shows that Defendants Did Not Use Any of Plaintiff's Protected Information "For Underwriting Purposes."

Plaintiff's denial letter, central to the FAC's allegations but notably left unattached to either the original complaint or the FAC, further undermines the threadbare pleading. Pruco's letter to Plaintiff attributes her application's denial solely to Plaintiff's own medical conditions. Bogo-Ernst Decl., Ex. C. The FAC does nothing to contradict that attribution, only asserting Section 20(b)'s "underwriting purposes" element by reciting its statutory definition. FAC ¶¶ 38, 39; *see also Allen v. Verizon Wireless*, 2013 WL 2467923, at *24 (D. Conn. June 6, 2013) (dismissing GINA claim where plaintiff "merely state[d] in a conclusory manner that her STD claim 'was denied due to Allen's family medical history'"). Absent an allegation that Defendants' stated reason for the denial was pretense, the FAC fails to make a plausible case that Plaintiff's genetic information played any role in that denial. Dismissal with prejudice is therefore appropriate.

### C. Plaintiff Has Not Adequately Alleged That Any Purported GIPA Violations Were "Knowing and Willful."

The FAC continues to assert in conclusory fashion that the purported GIPA violations were "knowing and willful, or were at least in reckless disregard of the statutory requirements," FAC ¶ 63, which is far from sufficient to state a claim on that basis. The FAC's only support for this bald allegation is that GIPA "has been in effect since 1998," and that, therefore, Defendants must have known that their conduct violated the statute. *Id*. This assertion is doubly specious. To start, the GIPA section under which Plaintiff is suing went into effect in *2015*, not 1998. *See* Pub. Act 98-1046. Additionally, over the course of GIPA's entire 26-year existence, there have been *no*

published judicial decisions applying any section of GIPA to a life insurer.[10] Thus, contrary to the FAC's innuendo, the completely untested nature of Plaintiff's claim shows that any purported GIPA violations would be negligent at best. Even if the Court permits this novel claim to proceed to discovery, it should dismiss Plaintiff's claim for knowing, willful, or reckless conduct. *See Kukovec v. Estée Lauder Cos., Inc.*, 2022 WL 16744196, at *8 (N.D. Ill. Nov. 7, 2022).

### D. Plaintiff Cannot Maintain a Claim Against Defendant PICA and, Accordingly, Cannot Purport to Represent a Class Against It.

As this Court has recognized in dozens of prior decisions, "vague references to a group of defendants, without specific allegations tying an individual defendant to the alleged [ ] conduct, do not meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure." *Harvey v. Brookhart*, 2020 WL 418880, at *3 (S.D. Ill. Jan. 27, 2020) (Rosenstengel, C.J.). Rather, Plaintiff is "required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint." *Id*. This, Plaintiff still fails to do. *See generally* FAC (referring to both Pruco and PICA as "Defendants," without distinction, in *every* allegation except ¶¶ 11–13, which generically describe each Defendant and halfheartedly suggest that they are alter egos); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A complaint based on a theory of collective responsibility must be dismissed.").

"While it is not impermissible to direct an allegation against multiple defendants at the pleading stage [where] a plaintiff may not be able to specify which individual committed which parts of the alleged misconduct," *Dorman v. Madison Cnty.*, 2022 WL 874733, at *3 (S.D. Ill. Mar. 24, 2022), that is not the case here. "Information that even Plaintiff[] may have at [her]

---

[10] Defendants' search has identified a total of only 16 decisions from any jurisdiction that so much as mention GIPA, even in passing.

disposal"—which might identify whether Pruco, PICA, or both were involved in her life insurance denial—"is not sufficiently plead." *See id.* In fact, Plaintiff's life insurance application and denial letter foreclose her claim against PICA. Specifically, Plaintiff applied for life insurance with Pruco, not PICA. Bogo-Ernst Decl., Ex. A at 1; *see also* Bogo-Ernst Decl., Ex. B, at 2 (noting that the "[p]olicy is issued by the company named at the beginning of this application"). Likewise, Plaintiff's denial letter came from "Pruco Life." Bogo-Ernst Decl., Ex. C. Thus, Plaintiff has supplied no basis for suing both Defendants, and PICA should be dismissed.

The FAC nevertheless vainly attempts to advance a theory of vicarious liability. FAC ¶¶ 12–13. Because this theory seeks to bypass the limited liability of an Arizona corporation (Pruco), Arizona law governs. *See Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012). Under Arizona law, these allegations do not meet the standard necessary to pierce the corporate veil. *Wolf Designs LLC v. Five 18 Designs LLC*, 635 F. Supp. 3d 787, 802 (D. Ariz. 2022) (a veil-piercing theory cannot stand absent "additional facts to *support* [ ] boilerplate claims"). Claims that Defendants share the same headquarters, trademark, and certain "officers, employees, supplies, and use of equipment," FAC ¶¶ 12–13, do not support an inference that Pruco is the mere alter ego of PICA and notably fail to address the required element that "observing [Pruco's] corporate form's privileges and protections would be unjust" (*e.g.*, that Pruco is judgment-proof or that Plaintiff relied on a mistaken belief that the two entities were identical). *See Wolf Designs*, 635 F. Supp. 3d at 802. With no viable theory of liability pled, there is no basis for Plaintiff's suit against PICA.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated: March 27, 2024                                   Respectfully submitted,


                                                        THE     PRUDENTIAL     INSURANCE
                                                        COMPANY OF AMERICA & PRUCO
                                                        LIFE INSURANCE COMPANY

                                                        /s/ Amanda S. Amert

                                                        Amanda S. Amert
                                                        Debra Bogo-Ernst
                                                        WILLKIE FARR & GALLAGHER LLP
                                                        300 N. LaSalle Dr.
                                                        Chicago, IL 60654
                                                        Tel: (312) 728-9010
                                                        Fax: (312) 728-9199
                                                        aamert@willkie.com
                                                        dernst@willkie.com

                                                        Laura Geist
                                                        WILLKIE FARR & GALLAGHER LLP
                                                        333 Bush St.
                                                        San Francisco, CA 94104
                                                        Tel: (415) 858-7440
                                                        lgeist@willkie.com

                                                        *Counsel for Defendants*