IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRYNN THOMPSON, individually and on behalf of similarly situated individuals, | |
| Plaintiff, | |
| v. | Case No. 3:23-CV-3904-NJR |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, and PRUCO LIFE INSURANCE COMPANY, an Arizona corporation, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Brynn Thompson ("Thompson"), individually and on behalf of similarly situated individuals who applied for life insurance coverage within the applicable limitations period, brings this lawsuit against The Prudential Insurance Company of America ("Prudential") and Pruco Life Insurance Company ("Pruco") (collectively, "Defendants") as a putative class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Through a First Amended Class Action Complaint (Doc. 24), Thompson complains that, under the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq.*, Defendants violated the right of the putative class members, including herself, to privacy concerning their genetic information by soliciting and considering the applicants' family medical history in their life insurance eligibility determination.

Pending now is a Motion to Dismiss the First Amended Complaint (Doc. 30) filed by Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants take the position that Thompson has failed to state a claim because GIPA does not apply to life insurance underwriting determinations and the factual allegations are otherwise insufficient to

suggest that Defendants violated GIPA in their underwriting process. Thompson has filed a response in opposition to Defendants' motion. (Doc. 37). Thompson argues that her pleadings offer sufficient facts to support all elements of her claim against Defendants. Defendants have since filed a reply brief. (Doc. 43).

Also pending is a Motion for Rule 201 Order of Judicial Notice (Doc. 46) filed by Thompson pursuant to Rule 201 of the Federal Rules of Evidence. Thompson has attached as exhibits multiple public records demonstrating that Prudential offers one or more types of health insurance products. Through the motion, Thompson concedes that the relevant provisions of GIPA exclude life insurers but nonetheless seeks judicial notice of Prudential as an insurer on grounds that Prudential offers unrelated insurance products that would fall within the regulatory ambit of GIPA. According to Thompson, the underwriting process of life insurance becomes subject to GIPA if the insurer also offers an unrelated product of health insurance. Defendants request denial on grounds that the motion is an "improper sur-reply" in violation of this Court's Local Rules, is untimely, and the consideration of it would be prejudicial insofar as Prudential's offering of health insurance is irrelevant to the life insurance underwriting process at issue. (*See* Doc. 49). In response, Thompson has filed a brief in support of her motion. (Doc. 50).

Having reviewed the pleadings, the briefs, and the applicable law, the Court grants Defendants' motion to dismiss (Doc. 30) insofar as the relevant provisions of GIPA do not apply to life insurance underwriting. As to Thompson's motion for judicial notice (Doc. 46), the Court concludes that the question of whether Prudential is an insurer within the meaning of GIPA by virtue of its offering of an unrelated product of health insurance—which the motion attempts to settle—is analytically distinct from whether it is an insurer offering both life and health insurance products—which the public records accompanying the motion serve to establish. That said, the Court construes it as a motion to supplement the record and grants it solely for purposes of

considering the accompanying public records in addressing the merits of the motion to dismiss.

## PROCEDURAL BACKGROUND

On October 30, 2023, Thompson, a citizen of Illinois, filed a complaint in Illinois state court against Defendants. (Doc. 1-2). On December 11, 2023, Defendants removed the action from state court based on this Court's diversity-of-citizenship jurisdiction. (Doc. 1). On February 21, 2024, Thompson filed her first amended complaint. (Doc. 24).

Defendants move to dismiss Thompson's first amended complaint (Doc. 30) and provide briefing in support of their motion (Doc. 31). Thompson opposes the motion to dismiss. (Doc. 37). Additionally, Defendants filed a reply brief (Doc. 43) and moved for leave (Docs. 44, 51) to submit the cases of *Thompson v. Banner Life Insurance Company*, 2024 WL 3650096 (S.D. Ill. Aug. 5, 2024) (McGlynn, J.) and *Anderson v. American General Life Insurance Company*, Civ. Action No. 1:24-CV-3684, Doc. 32 (N.D. Ill. Nov. 22, 2024), as supplemental authority supporting the motion to dismiss (Docs. 44-1, 51-1). The motions for leave were granted. (Docs. 45, 52).

In *Thompson*, the district court held that life insurers were not subject to GIPA. *Thompson*, 2024 WL 3650096, at *6. In *Anderson*, the district court dismissed the plaintiff's claim of GIPA violations through the use of his blood sample by a life insurer for life insurance underwriting purposes insofar as the plaintiff failed to sufficiently allege that the third party entity that "collected [the] blood sample from [the plaintiff] and sent it to a laboratory for testing" was a health care provider for purposes of section 20(b) of GIPA. *Anderson*, Civ. Action No. 1:24-CV-3684, Doc. 32 at 3-4. The district court in *Anderson* declined to further examine "whether life insurers [were] excluded from [s]ection 20(b)." *See id.* at 4.

On September 11, 2024, Thompson filed her motion for judicial notice. (Doc. 46). Defendants filed a response, arguing that the motion should be denied insofar as it is an improper sur-reply, untimely, and otherwise irrelevant. (Doc. 49). Thompson filed responsive briefing in

support of her motion. (Doc. 50).

## FACTUAL ALLEGATIONS

Through the first amended complaint, Thompson alleges the following:

Around May 2023, Thompson applied for life insurance coverage offered by Defendants in Effingham, Illinois. (Doc. 24 at ¶ 31). As part of Defendants' underwriting process, and as a precondition of insurance coverage, Defendants required Thompson to undergo a medical physical examination conducted by American Para Professional Systems, Inc., commonly known as APPS-Portamedic, or "APPS". (*Id.* at ¶ 32). APPS is a healthcare provider that is one of the largest providers in the nation of medical and paramedical services. (*Id.* at ¶ 33).

During the medical examination, APPS's medical staff required Thompson to answer questions concerning her family medical history including the manifestation of diseases or disorders in her family members. (*Id.* at ¶34). Such questions included whether Thompson's family members had a history of cancer, diabetes, heart disease, and other medical conditions. (*Id.*). In response, Thompson disclosed information regarding her family members' inheritable diseases and disorders, which APPS documented and collected. (*Id.* at ¶ 35). APPS's medical team also collected a blood sample from Thompson and sent it to a laboratory for testing. (*Id.* at ¶ 36).

Thompson alleges that, through this process, APPS created "protected health information that is genetic information" relating to her genetics and shared it with Defendants. (*Id.* at ¶ 37). Defendants then used this protected health information that included genetic information to assess Thompson's eligibility for life insurance coverage in accordance with Defendants' rules for determining eligibility. (*Id.* at ¶ 38). According to Thompson, her sensitive genetic information was considered and used by Defendants for underwriting purposes, including the assessment of her eligibility for life insurance coverage, in violation of GIPA. (*Id.* at ¶ 39). Through their failure to comply with GIPA, Defendants allegedly have violated Thompson's substantive state rights to

genetic privacy. (*Id.* at ¶ 40).

In using the genetic information of applicants for underwriting purposes, Thompson continues, "Defendants have acted and failed to act on grounds generally applicable to [Thompson] and the other members of the Class . . . ." (*Id.* at ¶ 48). Thompson, thus, seeks to represent a class defined as "[a]ll individuals who, according to Defendants' records, applied for insurance coverage with Defendants in Illinois and who provided genetic information to a healthcare provider that was used by Defendants for underwriting purposes within the applicable limitations period." (*Id.* at ¶ 41).

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for the "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Surviving a Rule 12(b)(6) motion means pleading "enough facts to state a claim to relief that is plausible on its face." *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible where the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion, all well-pleaded facts are accepted as true and viewed in the plaintiff's favor. *Heredia v. Cap. Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory elements, do not suffice." *Ashcroft*, 556 U.S. at 678. In other words, purely legal conclusions couched as factual allegations need not be accepted as true. *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## DISCUSSION

Section 20(b) of GIPA provides as follows:

An insurer shall not use or disclose protected health information that is genetic

>information for underwriting purposes. For purposes of this Section, "underwriting purposes" means, with respect to an insurer:
>
>>(1) rules for, or determination of, eligibility (including enrollment and continued eligibility) for, or determination of, benefits under the plan, coverage, or policy (including changes in deductibles or other cost-sharing mechanisms in return for activities such as completing a health risk assessment or participating in a wellness program);
>>
>>(2) the computation of premium or contribution amounts under the plan, coverage, or policy (including discounts, rebates, payments in kind, or other premium differential mechanisms in return for activities, such as completing a health risk assessment or participating in a wellness program);
>>
>>(3) the application of any pre-existing condition exclusion under the plan, coverage, or policy; and
>>
>>(4) other activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits.
>
>"Underwriting purposes" does not include determinations of medical appropriateness where an individual seeks a benefit under the plan, coverage, or policy.
>
>This subsection (b) does not apply to insurers that are issuing a long-term care policy, excluding a nursing home fixed indemnity plan.

410 ILCS 513/20(b).

In challenging the sufficiency of Thompson's first amended complaint, Defendants chiefly argue that section 20(b) of GIPA does not apply to life insurance underwriting.[1] According to Defendants, multiple tools of statutory interpretation support their reading of section 20(b): (i) the family medical history information "generated or received by" non-health care providers such as the American Para Professional Systems, or "APPS," does not constitute "protected health

---

[1] Defendants also argue that Thompson's pleadings fail to adequately allege that: (i) Defendants collected any protected genetic information through the American Para Professional System's inquiry of the applicant's family medical history; (ii) Defendants used such genetic information for underwriting purposes; (iii) any ostensible violations of section 20(b) by Defendants were "knowing and willful;" and (iv) Prudential bears liability for any purported violations based on Pruco's life insurance underwriting procedures. (Doc. 31 at 22-31). The merits of these arguments, however, need not be addressed insofar as Thompson's claim is disposed of on the threshold examination of the applicability of section 20(b) of GIPA to life insurance underwriting.

information that is genetic information" for purposes of section 20(b); (ii) an examination of the overall statutory framework of GIPA suggests that "[s]ection 20(b) only applies to [the underwriting process of] health insurance[;]" (iii) the legislative history of GIPA demonstrates the intent of the state legislature to exempt life insurers from the statute's reach; (iv) pending legislative proposals to amend GIPA inherently acknowledge the current statutory exemption for life insurers; and (v) the Illinois Department of Insurance's consistent administrative interpretation has never extended the restrictions of GIPA to life insurance underwriting activities. (Doc. 31 at 12-22).

Thompson responds by arguing that: (i) the genetic information obtained through the APPS is protected health information in this context insofar as the APPS is a healthcare provider that "engages in the provisioning of health care services including, for example, providing diagnostic services to assess the physical condition of an individual[;]"(ii) the express references to "accident and health insurance" in sections 20(a) and 20(c) provides a statutory inference that the omission of such specific language in section 20(b) indicates the legislative intent to include life insurance within the regulatory scope of the provision; and (iii) the legislative history and consequent amendments to GIPA, the proposed amendments of GIPA, and the treatment of the statute by the Illinois Department of Insurance, at minimum, do not preclude the application of 20(b) to life insurance. (Doc. 37 at 9-20).

In resolving the question of the applicability of section 20(b) to life insurance underwriting, the recent decision in *Thompson*, 2024 WL 3650096, which Defendants have submitted as supplemental authority (Docs. 44, 44-1), proves particularly instructive. In addressing a claim substantially identical to Thompson's, the district court in *Thompson* concluded that section 20(b)'s restrictions on the use and disclosure of genetic information for underwriting purposes did not apply to life insurance. *See Thompson*, 2024 WL 3650096, at *6.

The *Thompson* court first examined GIPA's definitions, which provide that an insurer is "(i) an entity that is subject to the jurisdiction of the Director of Insurance and (ii) a managed care plan[,]" and that a managed care plan is—

> a plan that establishes, operates, or maintains a network of health care providers that have entered into agreements with the plan to provide health care services to enrollees where the plan has the ultimate and direct contractual obligation to the enrollee to arrange for the provision of or pay for services.

*Id.* at *5 (quoting 410 ILCS 513/10) (quotations omitted). Highlighting that "an insurer must be subject to both" conditions enumerated above, the district court determined that the definition did "not include life insurance providers, who are not governed by a managed care plan." *Id.* The *Thompson* court then examined the language of section 20(b) within the broader framework of section 20 of GIPA. Observing that sections 20(a) and 20(c) regulate the use of genetic testing, specifically, "in connection with a policy of accident and health insurance[,]" *id.* (citing 410 ILCS 513/20(a), (c)), the district court applied the canon of ejusdem generis to construe the term "insurer" in sections 20(b) and 20(d) as "limited to 'accident and health insurance' only[,]" *id.* (citing *United States v. Sec. Mgmt. Co.*, 96 F.3d 260, 265 (7th Cir. 1996)).[2] The *Thompson* court further noted that the state legislature's omission of life insurers from the definition of insurers, as well as an examination of the legislative history and the conspicuous absence of litigation on the issue during the nine years following the implementation of section 20(b), "indicate[d] that they did not intend for GIPA to be applied to life insurers . . . ." *Id.* at *5-6.

The Court deems the *Thompson* court's reasoning persuasive. Indeed, examining the term "insurer" through multiple interpretive lenses—such as its congruence with the function of section 20(b) and the language of the related provisions within GIPA including sections 10, 20(a),

---

[2] The canon of ejusdem generis provides that, where a general term is preceded or followed by a series of specific terms, the general term is construed to include only the "items of the same type or nature as those specifically enumerated." *Sec. Mgmt. Co.*, 96 F.3d at 265.

20(c), 20(d), as well the legislative and judicial context—provides that section 20(b) does not apply to life insurers.

At no point does Thompson challenge, be it directly or indirectly, the *Thompson* court's reasoning. Rather, through what is now a motion to supplement the record (Doc. 46), she attempts to distinguish *Thompson* by advancing a peculiar interpretation that its holding applies exclusively to insurers providing solely life insurance products, such as the defendant in that case, and does not extend to insurers that offer health insurance in addition to life insurance products (*id.* at 3-4). In doing so, Thompson is asking the undersigned to create an anomalous regulatory scheme where GIPA would exempt the use of genetic information for purposes of life insurance underwriting when the insurer offers only life insurance products but otherwise regulate the same use when the insurer happens to offer health insurance in addition to life insurance. Such a reading contravenes the basic principle of statutory construction that courts must "consider only those constructions of a statute that are 'fairly possible.'" *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 (2010) (citing *United States v. Sec. Indus. Bank*, 459 U.S. 70, 78 (1982)).

Nothing in the record or any case law suggests that the state legislature intended to apply section 20(b) on life insurance underwriting, much less in a manner creating disparate regulatory treatments based entirely on whether the insurer also offered health insurance.

## CONCLUSION

For these reasons, the Court concludes that section 20(b) of the Illinois Genetic Information Privacy Act does not apply to the underwriting practices concerning life insurance policies. Insofar as the fundamental deficiency in Plaintiff Thompson's claim stems from this statutory inapplicability, any attempts to cure through further amendments would be futile. Accordingly, the Motion to Dismiss filed by Defendants Prudential and Pruco (Doc. 34) and the motion to

supplement the record filed by Thompson (Doc. 46) are **GRANTED**. Thompson's request for the Court to take judicial notice that Defendant Prudential meets the statutory definition of an "insurer" under GIPA is **DENIED**.

Finally, because further amendments to the complaint would be futile, this entire action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  March 31, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**